UNITED STATES DISTRICT COURT,
NORTHERN DISTRICT OF ILLINOIS

**Michael Haenlein**, *Individually and on behalf of all others similarly situated,*

*Plaintiff,*

v.

**Remington Seeds, LLC**,

*Defendant.*

Case No: 1:22-cv-02849

**Plaintiff's Unopposed Motion and Memorandum in Support of Preliminary Approval Of Class Action Settlement Pursuant to Federal Rule of Civil Procedure 23(e)[1]**

Plaintiff Michael Haenlein ("Plaintiff"), individually and on behalf of the purported class, respectfully moves the Court for Preliminary approval of the parties' class action settlement, in accordance with Federal Rule of Civil Procedure 23(e)'s procedures. In support of his Motion, Plaintiff states as follows:

**Introduction**

Michael Haenlein brought a putative class action on April 22, 2022, against Remington Seeds, LLC ("Defendant"), asserting claims under the Illinois Biometric Information Privacy Act ("BIPA"), 740 Ill. Comp. Stat. § 14/1, *et seq*. Defendant denies these allegations, denies violation of any law, and denies all liability. The parties have reached a proposed settlement that provides all Class Members with the ability to receive a share of the proposed Settlement Fund. *See* Settlement Agreement And Release (the "Settlement Agreement"), attached hereto as <u>Exhibit 1</u>. The Settlement Agreement provides significant relief to an estimated 418 individuals comprising the class and establishes a cash settlement fund in the amount of $376,200.00, from which Class

---

[1] Defendant does not oppose plaintiff's motion or the assertions herein for purposes of seeking preliminary settlement approval only and otherwise reserves all defenses and positions.

Members who do not exclude themselves from the Class will be compensated. If approved, the Settlement Agreement will bring certainty, closure, and significant and valuable relief for individuals to what otherwise would likely be contentious and costly litigation regarding Defendant's alleged unlawful collection, use, storage, and dissemination of individuals' alleged biometric identifiers and/or biometric information.

Mr. Haenlein now seeks preliminary approval of the Settlement, certification of a class for settlement purposes, appointment of class counsel, and approval of the proposed form and method of class notice. This Motion describes in detail the reasons why preliminary approval is in the best interests of the class and is consistent with Rule 23(e). As discussed in more detail below, the most important consideration in evaluating the fairness of a proposed class action settlement is the strength of Plaintiff's case on the merits balanced against the relief obtained in the settlement. *See Am. Int'l Grp., Inc. et al v. ACE INA Holdings, et al.*, Nos. 07-cv-2898, 09-cv-2026, 2012 WL 651727 (N.D. Ill. Feb. 28, 2012). While Plaintiff believes he could secure class certification and prevail on the merits at trial, success is not guaranteed, particularly given the uncertainty in the law surrounding BIPA and Defendant's position to the contrary and preparedness to defend this case. The terms of the Settlement, which includes a Settlement Fund providing Class Members the ability to receive meaningful cash compensation meet and exceed the applicable standards of fairness. Accordingly, the Court should preliminarily approve the Settlement so that Class Members can receive notice of their rights and the claims administration process may begin.

## Background

### A. BIPA

The Illinois Biometric Information Privacy Act is an Illinois statute that provides individuals with certain protections for biometric data covered by the statute. To effectuate its

purpose, BIPA requires private entities that seek to use biometric identifiers (*i.e.*, hand geometry or fingerprint) and biometric information (any information "based on an individual's biometric identifier used to identify an individual") to, in general:

1. Inform the individual in writing that biometric identifiers and/or biometric information will be collected, stored, used, or disseminated;
2. Inform the individual in writing of the specific purpose and length of time for which such biometric identifiers and/or information is being collected, stored, used, and disseminated;
3. Obtain a written release from the individual allowing the capture, collection, storage, use, and dissemination of their biometric identifiers and/or information; and
4. Publish a publicly available retention schedule and guidelines for permanently destroying biometric identifiers and/or information.

740 Ill. Comp. Stat. § 14/10, 15.

BIPA was enacted in large part to protect certain individual biometric data, provide individuals with a means of enforcing their statutory rights and protecting biometric information, and regulate the practice of collecting, using, and disseminating such sensitive information.

**B.   Procedural History**

Plaintiff filed his Class Action Complaint in the Circuit Court of Cook County on April 22, 2022. In his Complaint, Mr. Haenlein alleges that Defendant utilizes biometric timekeeping devices at its location in Illinois and that its employees used the devices when clocking into and out of work. Plaintiff alleged that Defendant failed to comply with BIPA by: (1) failing to inform individuals in writing that it will be capturing, collecting, storing, using, and disseminating biometric data (*i.e.*, statutorily-defined biometric identifiers and/or information) prior to doing so; (2) failing to obtain a written release for the capture of biometric data prior to such capture; (3) failing to inform individuals in writing of the specific purpose and length of time for which biometric data is captured; and (4) failing to publish a publicly available retention schedule and guidelines for permanently destroying biometric data. On May 31, 2022, Defendant timely

3

removed the suit to this Court; Plaintiff declined to challenge such removal and on June 6, 2022, the parties moved to stay the litigation pending the outcome of settlement discussions.

At the same time this case was removed to federal court, the parties began exploring the possibility of an early resolution. By on or around June 25, 2022, the Parties had reached a settlement in principle and thereafter, expended considerable efforts further negotiating specific terms of the Settlement, including the form of notice provided to Class Members, the scope of the release, the Preliminary Approval Order, confidentiality, and settlement benefits. These extensive negotiations culminated in the Settlement Agreement for which the Parties now seek preliminary approval, attached hereto as Exhibit 1.

<strong><u>Proposed Settlement Agreement</u></strong>

I. **THE PROPOSED SETTLEMENT**

    A. **The Settlement Class**

The proposed Settlement would establish a Class defined as follows:

> [A]ll persons who, using their finger, registered to use an alleged 'biometric' timekeeping system while working for Defendant in Illinois from April 22, 2017, through the date the Court enters an order preliminarily approving the Agreement, except that any individual who timely submits a valid request for exclusion pursuant to the procedures set forth in this Agreement shall not be included in the Class.

Exhibit 1, ¶ 1.3. The Parties estimate that the size of the Class is approximately 418 individuals.

    B. **The Settlement Fund**

The proposed Settlement will establish a Settlement Fund of $376,200.00. Exhibit 1, ¶ 1.28. Each Class Member who does not timely and properly opt out will receive an equal share of the Settlement Fund, after first deducting approved amounts for notice and administration costs, attorneys' fees and costs, and an incentive award to Plaintiff from the Settlement Fund. Id. at § 3. Any unclaimed or undistributed amounts from the Settlement Fund (including checks disbursed to

Class Members that are uncashed after 90 days of issuance, for any reason) will be allocated as a *cy pres* payment to the United Way. Id., ¶ 3.4.

### C. Notice and Settlement Administration

The claims at issue in this litigation primarily consist of Defendant's alleged violations of BIPA with respect to a group of individuals alleged to be Defendant's employees. Accordingly, to reach as many potential Class Members as possible, notice will be provided via direct mail notice by U.S. Mail and email, where available, to all Class Members; Exhibit 1, ¶ 2.4(c).

### D. Exclusion and Objection Procedures

Class Members will have an opportunity to exclude themselves from the Settlement or object to its approval. The procedures and deadlines for filing exclusion requests and objections, *see* Exhibit 1, ¶¶ 2.5-2.6, will be identified in the Notice directly sent to Class Members. The Notices inform Class Members that the Fairness Hearing will be their opportunity to appear if they choose to do so and have their objections heard. The notices also inform Class Members that they will be bound by the Release contained in the Settlement Agreement unless they exercise their right to exclusion in a proper and timely manner. *See* Exhibit 1, ¶ 3.7; *see also* Exhibit A to the Settlement Agreement.

### E. Release

In exchange for the relief described above, Class Members who do not exclude themselves will provide Defendant and the Releasees a full release of all "Released Claims," generally including claims, arising out of, related to, or connected with the alleged capture, collection, storage, possession, transmission, conversion, disclosure, and/or other use of biometric identifiers and/or biometric information in connection with Defendant's alleged biometric time tracking system or time clock. Exhibit 1, ¶¶ 1.23, 3.7.

**II.     Class Action Settlement Procedure**

The well-defined class action settlement procedure includes three distinct steps:

1. Preliminary approval of the proposed settlement after submission to the Court of a written motion for preliminary approval;

2. Dissemination of mailed and/or published notice of settlement to all affected class members; and

3. A final settlement approval hearing at which class members may be heard regarding the settlement, and at which argument concerning the fairness, adequacy, and reasonableness of the settlement may be presented.

*See* Fed. R. Civ. P. 23(e); *see also* Herbert B. Newberg & Alba Conte, *Newberg on Class Actions*, § 11.22 et seq. (4th ed. 2002). This process safeguards Class Members' procedural due process rights and enables the Court to fulfill its role as guardian of Class interests. With this motion, Plaintiff requests that the Court take the first step – granting preliminary approval of the Settlement Agreement, approving the proposed Notice and ordering its distribution.

**A.     The Terms of the Settlement Are Fair and Reasonable and Warrant Preliminary Approval.**

The Settlement represents a fair and reasonable resolution of this dispute and is worthy of notice to and consideration by the Class Members. It will provide significant financial relief to participating Class Members as compensation for their Released Claims and will relieve the Parties of the burden, uncertainty, and risk of continued litigation.

Courts review proposed class action settlements at two distinct stages. Conte & Newberg, 4 *Newberg on Class Actions*, § 11.25, at 38-39 (4th ed. 2002); *see, e.g., Kaufman v. Am. Express Travel Related Servs. Co.*, 264 F.R.D. 438, 447 (N.D. Ill. 2009). The first stage is a preliminary, pre-notification hearing to determine whether the proposed settlement is "within the range of possible approval." *Newberg*, § 11.25, at 38-39; *Armstrong v. Board of Sch. Dirs. Of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980), *overruled on other grounds*; *Sabon*, 2016 IL App.

(2d) 150236, ¶4. The preliminary approval hearing is not a fairness hearing, but rather a hearing to ascertain whether there is any reason to notify the class members of the proposed settlement based on the written submissions and informal presentation from the settling parties. *Manual for Complex Litigation*, § 21.632 (4th ed. 2002). If the Court finds the settlement proposal "within the range of possible approval," the case proceeds to the second stage in the review process: the final approval hearing. *Newberg*, § 11.25, at 38-39.

Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide complete victory, given that parties to a settlement "benefit by immediately resolving the litigation and receiving some measure of vindication for [their] position[s] while foregoing the opportunity to achieve an unmitigated victory." *In re AT&T Mobility Wireless Data Servs. Sales Litig.*, 270 F.R.D. 330, 347 (N.D. Ill. 2010) (internal quotations and citation omitted); *see also GMAC Mortgage Corp. of Pa. v. Stapleton*, 236 Ill. App. 3d 486, 493 (1st Dist. 1992) ("The court in approving [a class action settlement] should not judge the legal and factual questions by the same criteria applied in a trial on the merits"). There is a strong judicial and public policy favoring the settlement of class action litigation, and such a settlement should be approved by the Court after inquiry into whether the settlement is "fair, reasonable, and adequate." *Isby v. Bayh*, 75 F.3d 1191, 1198 (7th Cir. 1996); *See Molinari v. Fin. Asset Mgmt. Sys., Inc.*, No. 18-CV-01526, 2021 WL 5832788, at *1 (N.D. Ill. Nov. 22, 2021). "Although this standard and the factors used to measure it are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range, a more summary version of the same inquiry takes place at the preliminary phase." *Kessler v. Am. Resorts Int'l.*, No. 05-cv-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (citing *Armstrong*, 616 F.2d at 314).

The factors ultimately to be considered by a court are: "[1] the strength of plaintiffs' case compared to the amount of defendants' settlement offer, [2] an assessment of the likely complexity, length and expense of the litigation, [3] an evaluation of the amount of opposition to settlement among affected parties, [4] the opinion of competent counsel, and [5] the stage of the proceedings and the amount of discovery completed at the time of settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citing *Isby*, 75 F.3d at 1199); *see also Armstrong*, 616 F.2d at 314. Of these considerations, the first is the most important. Id., at 653.

Even a preliminary application of these factors to this case demonstrates that the proposed settlement is fair, reasonable, and adequate. As to the first factor and second factors, the settlement in this case provides substantial material benefits to the Class: every Class Member (who does not exclude themselves) will receive a monetary payment from the Settlement Fund after deductions for administrative expenses, fees and costs, and an incentive award obviating the need for prolonged litigation, including vigorous motions practice and extensive discovery into Defendant's alleged collection practices.

While Plaintiff believes he would likely prevail on his claims, he is also aware that Defendant has expressed a firm denial of his material allegations and the intent to pursue several legal and factual defenses including but not limited to whether timekeeping system at issue is subject to BIPA, and that Plaintiff has not adequately pled a violation of the BIPA such that he may receive liquidated damages. If successful, these and other potential defenses would result in Plaintiff and the proposed Class Members receiving no payment whatsoever. Taking these realities into account and recognizing the risks involved in any litigation, the monetary relief available to each Class Member in the Settlement represents a truly excellent result for the Class.

The amount of the Settlement Fund and the payments to Class Members are particularly significant in light of the risks of ongoing litigation. If Defendant were to succeed on any of its defenses to liability against Plaintiff's claims, Class Members would recover nothing. In addition to any defenses on the merits Defendant would raise, Plaintiff would also otherwise be required to prevail on a class certification motion, which would be highly contested and for which success is certainly not guaranteed. *See Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 586 (N.D. Ill. 2011) ("Settlement allows the class to avoid the inherent risk, complexity, time and cost associated with continued litigation") (internal citations omitted). "If the Court approves the [Settlement], the present lawsuit will come to an end and [Class Members] will realize both immediate and future benefits as a result." *Id*. Approval would allow Plaintiff and the Class Members to receive meaningful and significant payments now, instead of years from now or never. *Id*. at 582.

In the absence of settlement, it is certain that the expense, duration, and complexity of the protracted litigation that would result would be substantial. Not only would the Parties have to undergo significant motion practice before any trial on the merits is even contemplated, but evidence and witnesses including potentially expert witnesses would have to be assembled for any trial. Further, given the complexity of the issues and the amount in controversy, the defeated party would likely appeal both any decision on the merits as well as on class certification. As such, the immediate and considerable relief provided to the Class under the Settlement Agreement weighs heavily in favor of its approval compared to the inherent risk and delay of a long and drawn out litigation, trial, and appeals. Defendant's ability to pay, further supports the settlement. Any judgment finally entered against Defendant would likely be much higher than their exposure from the Settlement and could constitute a very significant loss to Defendant, as BIPA provides for statutory damages of $1,000 per negligent violation and $5,000 per intentional or reckless

9

violation, with the appropriate application of such damages in the BIPA context not yet having been resolved.

With respect to the third factor, opposition, there is no opposition to the Settlement, and due to the strength of this Settlement and the amount of the award that Class Members can claim, Plaintiff expects little to no opposition to the Settlement by any Class Member in the future. Plaintiff himself ardently approves the Settlement and believes that it is a fair and reasonable settlement in light of the defenses raised by Defendant and the potential risks involved with continued litigation.

As to factor four, Plaintiff's counsel believe that the proposed Agreement is in the best interest of the Class Members because they will be provided an immediate payment instead of having to wait for the litigation and any subsequent appeals to run their course. Further, due to the defenses that Defendant has indicated that it would raise should the case proceed through litigation – and the resources that Defendant has committed to defend and litigate this matter – it is possible that the Class Members would receive no benefit whatsoever in the absence of this Settlement. Given Plaintiff's counsel's extensive experience litigating similar class action cases in federal and state courts across the country, including dozens of other BIPA cases, this factor also weighs in favor of granting preliminary approval. *See GMAC*, 236 Ill. App. 3d at 497 (finding that the court should give weight to the fact that class counsel supports the class settlement in light of its experience prosecuting similar cases).

Moreover, there is an initial presumption that a proposed settlement is fair and reasonable when it was the result of arms-length negotiations. *Newberg*, § 11.42. Here, the Settlement was reached only after highly-contested, arm's-length negotiations, between counsel for the Parties, both of which are highly experienced in class action and BIPA litigation, and which occurred over

the course of months. Such an involved process underscores the non-collusive nature of the proposed Settlement. Finally, given the excellent result for the Class in terms of the monetary relief made available it is clear that this Settlement was reached as a result of good-faith negotiations rather than any collusion between the Parties.

Finally, with respect to factor five, the Settlement was reached before the parties expended substantial time or effort completing discovery. Had the Parties not reached an agreement, this case would have proceeded further into discovery, dispositive motions, and class certification, with the Parties being required to expend substantial resources to go forward with their respective claims and defenses, all while facing a significant risk regarding any decision on the merits of the case and whether a class should be certified.

Although there are numerous other BIPA class settlements with which to compare the instant proposal, the Court need not be limited to this practice area as to the fairness, reasonableness, and adequacy of the instant Settlement. Many of the previously approved settlements provide for less value than the settlement at bar. For example, in *Sekura v. L.A. Tan Enterprises, Inc.*, No. 2015-CH-16694 (Cir. Ct. Cook Cnty., Ill. 2016), the BIPA class settlement resulted in each class member being eligible to receive a *pro rata* share of a settlement fund that would have amounted to approximately $40 per person if each class member had submitted a valid claim. In *Carroll v. Crème de la Crème, Inc.*, No. 2017-CH-01624 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement resulted in each class member being eligible to enroll in credit and identity monitoring services free of charge without further monetary relief. In *Taylor v. Sunrise Senior Living Mgmt., Inc.*, 2017-CH-15152 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement resulted in class members receiving a gross amount of $115 or $40 depending on whether the claim accrued within 2 years or 5 years to account for older claims potentially being time-barred. In *Zepeda v.*

11

*Intercontinental Hotels Group, Inc.*, No. 2018-CH-02140 (Cir. Ct. Cook Cnty., Ill. 2018), the settlement provided each class member being eligible to receive a *pro rata* share of a settlement fund that would amount to approximately $500 per person before deductions for administrative expenses, attorneys' fees and costs, and an incentive award. Here, the Settlement provides each class member $900.00 before attorneys' fees, costs, administrative expenses, and a service award to Plaintiff are deducted from the Settlement Fund. That will be the case regardless of how many Class Members file a valid claim. This result is fair, reasonable, and adequate and warrants Court approval.

### B. The Proposed Class Notice Provides Adequate Notice to the Class and Should be Approved

The content of the proposed Notice, which is attached to the Settlement Agreement as Exhibit A, fully complies with Due Process and Rule 23 and therefore should be approved for distribution to the Class. According to Rule 23, Notice must be: "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). Moreover, such notice must include "(i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues, or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment on members under Rule 23(c)(3)." Id. All of which are included in the Notice here.

The proposed Notice in this case satisfy both the requirements of Rule 23 and due process. As set forth in detail in Paragraph 2.4 of the Settlement Agreement, there is a highly detailed notice plan that incorporates traditional paper notice, which is designed to reach as many potential Class Members as possible, and email where available. Direct notice of the Settlement will be sent to all

Class Members whom Defendant has identified as having used the applicable timekeeping system during the relevant time period. The direct notice process should be very effective at reaching the Class Members given the relationship between Defendant and Class Members. The proposed Notice is attached as Exhibit A to the Settlement Agreement and should be approved by the Court. As such, the proposed methods of notice comport with Rule 23 and the requirements of due process.

      **C.    The Court Should Grant Class Certification for Settlement Purposes.**

For settlement purposes only, the Parties have agreed that the Court should make preliminary findings and enter an Order granting provisional certification of the Class and appoint Plaintiff and his counsel to represent the Class. "The validity of use of a temporary settlement class is not usually questioned." *Newberg*, §11.22. The *Manual for Complex Litigation* explains the benefits of settlement classes:

> Settlement classes – cases certified as class actions solely for settlement – can provide significant benefits to class members and enable the defendants to achieve final resolution of multiple suits. Settlement classes also permit defendants to settle while preserving the right to contest the propriety and scope of the class allegations if the settlement is not approved[.]…An early settlement produces certainty for the plaintiffs and defendants and greatly reduces litigation expenses.

*Manual for Complex Litigation* (Fourth) § 21.612.

Before granting preliminary approval of a class action settlement, a court should determine that the proposed settlement class is a proper class for settlement purposes. *Id*. § 21.632; *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997); *see Kaufman v. American Express Travel Telated Services, Co.*, 246 F.R.D. 438, 441-442 (ND. Ill. 2009). A class may be certified under Rule 23 of the Federal Rules of Civil Procedure if the following "prerequisites" are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of fact or law common to the class, which common questions predominate over any questions

13

affecting only individual members; (3) the representative parties will fairly and adequately protect the interest of the class; and (4) the class action is an appropriate method for the fair and efficient adjudication of the controversy.

When reviewing a request for preliminarily approve of a proposed class settlement, the court's evaluation may be more relaxed than when considering a contested motion for class certification or an entry of a final order. Regardless, the Court must still decide whether the proposed Class satisfies the requirements of Rule 23(a).

Rule 23(a)'s first requirement is that the proposed class is so numerous that joinder of all parties is impracticable. The rule provides no firm number but, courts have held that numerosity can be satisfied where more than 40 putative class members exist. *See Kurgan v. Chiro One Wellness Centers. LLC*, No. 10 Civ. 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014). Here, 418 of Defendant's current and former employees comprise the putative class. *Compare Kurgan*, at *5 (finding 374 members is sufficiently numerous to satisfy the numerosity requirement). This number is far in excess of the forty class members typically used as a benchmark. Accordingly, the **numerosity** requirement is satisfied.

Rule 23(a)'s second requirement is that common questions of law or fact predominate the class. "Commonality requires that there be at least one question of law or fact common to the class." *Barragan v. Evanger's Dog & Cat Food Co.*, 259 F.R.D. 330, 334 (N.D. Ill. 2009), quoting Rosario v. Livaditis, 963 F.2d 1013, 1018 (7th Cir. 1992). Common questions of law or fact are found when claims of individual members have their genesis in the same statute or are aggrieved by the same conduct. *Kurgan*, at *6.

In this case, and for purposes of evaluating whether a settlement class is appropriate, all members of the proposed Class share a common statutory claim, one or more violations of BIPA:

14

the alleged collection, storage, use, and dissemination of Class Members' biometrics without consent. Proving a BIPA violation would require the resolution of some of the same factual and legal issues, including: (1) whether the information taken from Class Members constituted biometric identifiers or biometric information as defined by BIPA; (2) whether such information was taken without the consent required under BIPA; (3) whether Defendant had a BIPA-compliant, publicly-available, written policy addressing retention and storage of biometric identifiers and information; and (4) whether such conduct violated BIPA. Predominance is satisfied "when there exists generalized evidence that proves or disproves an element on a simultaneous, class-wide basis… Such proof obviates the need to examine each class member's individual position." *Golon v. Ohio Savs. Bank*, No. 98-cv-7430, 1999 WL 965593, at *4 (N.D. Ill. Oct. 15, 1999). Here, the common questions resulting from Defendant's alleged conduct predominate over any individual issues that may exist and can be answered on a class-wide basis based on common evidence maintained by Defendant. Accordingly, the ***commonality*** requirement is satisfied.

Rule 23(a)'s third requirement is that the plaintiff's claims are typical of the injury suffered by the class and that they arise form or a based on the same legal theory giving rise to the action. *Kurgan*, 2014 WL 642092, at *7. "Typicality and commonality are closely related[, but] Typical does not mean identical, and the typicality requirement is liberally construed." Id. at *7 (internal quotation omitted).

Plaintiff's claims are typical of the claims of the Class at large because they arise from the same course of action by Defendant: Defendant's alleged failure to comply with BIPA's statutory requirements. Plaintiff alleges that Defendant failed to properly inform him and others similarly situated in writing of the specific purpose and length of time for which their biometric data was collected, stored, disseminated, and used; the alleged failure to provide a publicly available

15

retention schedule and guidelines for permanently destroying Plaintiff's and other similarly-situated individuals' biometric data; and the alleged failure to obtain written consent prior to collecting, storing, using, and disseminating Plaintiff's and Class Members' biometric data. While there may be *de minimis* factual differences between each individual claim, those claims are still based on the same legal theory. Accordingly, the ***typicality*** requirement is satisfied.

Rule 23(a)'s fourth requirement is adequate representation provided both by the named plaintiff and class counsel—can the representative party fairly and adequately protect the interests of the class? *King v. State Farm Mut. Auto. Ins. Co.*, No. 1:19-CV-1120-JES-TSH, 2020 WL 4784733, at *5 (C.D. Ill. Aug. 18, 2020) (citing *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993)).

Here, Mr. Haenlein's interests are entirely representative of and consistent with the interests of the proposed Class: all have allegedly had their biometric data taken and used by Defendant in a manner inconsistent with the legal protections provided by BIPA. Plaintiff's pursuit of this matter has demonstrated that he has been, and will remain, a zealous advocate for the Class. Thus, Mr. Haenlein's interests are closely aligned with the Class.

Similarly, proposed Class Counsel have regularly engaged in major complex litigation, have extensive experience in class action lawsuits, and indeed, have been among the forerunners in pursuing BIPA class actions on behalf of aggrieved employees. *See* Exhibit 2, Peiffer Wolf Carr Kane Conway & Wise, LLP Firm Resume. Accordingly, Plaintiff's counsel will adequately represent the Class for settlement purposes.

Once Rule 23(a) is satisfied, the Court must turn to Rule 23(b) which requires that the Court find "[1] questions of law or fact common to class members predominate over any questions affecting only individual members, and [2] that a class action is superior to other available methods

16

for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3); *King*, 2020 WL 4784733, at *5.

Pertinent considerations include: "[1] the class members' interests in individually controlling the prosecution or defense in separate actions; [2] the extent and nature of any litigation concerning the controversy already begun or against class members; [3] the desirability of concentrating the litigation claims in the particular forum; and [4] the likely difficulties in managing a class action." Id. at *5. A class action is "intended to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." Id., at *5. The fact that numerosity, commonality, typicality, and adequacy of representation have all been demonstrated in the instant case makes it clear that the requirements of Rule 23(c) is satisfied as well.

Moreover, here a class action is superior to multiple individual actions because litigation costs are high, the statutory liquidated damages are limited making individual legal actions cost prohibitive. This is especially true in cases involving BIPA, which would otherwise result in many relatively small, individual claims. *See CE Design Ltd.*, 2015 IL App (1st) 131465, ¶¶ 27-28 (finding that a class action is a superior vehicle for resolving the class members' TCPA claims and that "[t]here is no doubt that certifying the class in this case, where there are potentially thousands of claimants, is an efficient and economical way to proceed and will prevent multiple suits and inconsistent judgments").

This case is particularly well-suited for class treatment because the claims of Plaintiff and the proposed Class Members involve identical alleged violations of a state statute for the alleged unauthorized collection, storage, use, and dissemination of Class Members' biometric data while

17

failing to comply with BIPA. It is thus unlikely that individuals would invest the time and expense necessary to seek relief through individual litigation. Moreover, because the action will now settle, the Court need not be concerned with issues of manageability relating to trial. When "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems…for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

A class action is the superior method of resolving large-scale claims if it will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem*, 521 U.S. at 615. Accordingly, a class action is the superior method of adjudicating this action and the proposed Class should be certified.

### III. CONCLUSION

For the foregoing reasons, Plaintiff Michael Haenlein respectfully requests that the Court enter an Order: (1) appointing Michael Haenlein as the Class Representative; (2) appointing Brandon Wise, Paul Lesko, and Adam Florek of Peiffer Wolf Carr Kane Conway & Wise, LLP as Class Counsel; (3) preliminarily approving the proposed Settlement Agreement; (4) approving the form and methods of the proposed Notice; (5) ordering the issuance of Notice; and (6) granting such further relief as the Court deems reasonable and just.

Date: October 7, 2022        Respectfully Submitted,

                            */s/ Adam Florek*
                            Brandon M. Wise
                            Paul A. Lesko
                            Adam Florek
                            **PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
                            818 Lafayette Ave., Floor 2

St. Louis, MO 63104
314-833-4825
bwise@peifferwolf.com
plesko@peifferwolf.com
aflorek@peifferwolf.com

**ATTORNEYS FOR PLAINTIFF AND THE PUTATIVE CLASS**

## CERTIFICATE OF SERVICE

    I hereby certify that on October 7, 2022, I filed the foregoing document with the clerk of the Court using the CM/ECF, which should further distribute a true and accurate copy of the foregoing to all counsel of record.

<em>/s/ Adam Florek</em>